UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

S.K. SERVICES and STEVE HOGUE, )
)
       Plaintiffs, )
)   No.: 1:08-CV-158
   v. )
)   Chief Judge Curtis L. Collier
FEDEX GROUND PACKAGE SYSTEM, )
INC. )
)
       Defendants. )

**MEMORANDUM**

Before the Court is Defendant Fed Ex Ground Package System's motion for partial judgment on the pleadings (Court File No. 13). Having considered the parties' briefs (Court File No. 14, 27, 31), the Court will **GRANT IN PART** and **DENY IN PART** Defendant's motion (Court File No. 13).

**I. BACKGROUND**

    **A. Relevant Facts**

Plaintiff Steve Hogue ("Hogue") is an owner and manager of Plaintiff S.K. Services ("SK"). According to Plaintiffs' complaint, SK and Defendant originally entered into a contract in 2002 under which SK would provide janitorial services to Defendant. This contract was apparently renewed, and the most recent written contract was effective from June 20, 2007 to June 20, 2008 (Court File No. 17, ex. 1). The contract states it "may not be modified or supplemented by any agreement or representation that is not contained in the Agreement. Amendments to this Agreement must be in a writing signed by the parties."

Plaintiffs' complaint contends in 2007 they "were informed the contract would be renewed"

for 2008-09. At some point, Plaintiffs also learned Defendant was going to open a new facility. SK alleges it "was promised the contract for the new facility." As an inducement to secure the contract, SK's rate on the existing contract was not increased when the contract was renewed in 2007.

One of SK's employees assigned to perform janitorial duties for Defendant was Tommy Blake, an African-American. One of Defendant's management employees allegedly repeatedly subjected Blake to "racially offensive behavior." In December 2007, Plaintiffs contend Blake was wrongfully accused of stealing payroll checks from Defendant, an accusation allegedly made based on Blake's race and the racial bias of Defendant's supervisory employees. Defendant instructed SK that Blake would not be allowed on Defendant's property. Because SK had no alternative assignment for Blake, SK terminated him.

On February 18, 2008, SK and Hogue complained to Defendant regarding the racial discrimination against Blake. In retaliation for the complaint, Defendant allegedly broke its promise to award SK the janitorial contract for its new facility and did not renew the contract for the original facility for 2008-09. In addition, Defendant's senior manager "began to intentionally subject Plaintiff Hogue to hostile, harassing and intimating [sic] treatment in the workplace, causing Plaintiff Hogue to suffer emotional distress."

### B. Procedural History

Plaintiffs filed their complaint in the Chancery Court of Hamilton County, alleging breach of contract, violation of 42 U.S.C. § 1981 and Tenn. Code Ann. § 4-21-301(2), and outrageous conduct and intentional infliction of emotional distress ("IIED").[1] Defendant removed the case to

---

[1] Outrageous conduct and IIED are the same tort. *John Doe 1 ex rel. Jane Doe 1 v. Roman Catholic Diocese*, 154 S.W.3d 22, 31 (Tenn. 2005). Plaintiffs also alleged breach of duty of good faith and fair dealing, but agreed with Defendant to dismiss that claim (Court File No. 11).

this court based on federal question jurisdiction.[2] Subsequently, Plaintiff amended the complaint to allege Defendant has not paid outstanding invoices on the original contract.

Defendant subsequently moved for partial summary judgment (Court File No. 15), challenging Plaintiffs' retaliation claims, and partial judgment on the pleadings (Court File No. 13), challenging Plaintiffs' claims for breach of contract and outrageous conduct and intentional infliction of emotional distress. The motion for partial summary judgment is not yet ripe for a decision, but the motion for judgment on the pleadings is.

## II. STANDARD OF REVIEW

Defendant moved for partial judgment on the pleadings under Fed. R. Civ. P. 12(c). A court considers a motion under Rule 12(c) using the same standard of review as a Rule 12(b)(6) motion. *Roger Miller Music, Inc. v. Sony/ATV Publ'g, L.L.C,* 477 F.3d 383, 389 (6th Cir. 2007).

When reviewing a Fed. R. Civ. P. 12(b)(6) motion to dismiss, the Court must construe the complaint in the light most favorable to the plaintiff, *Bloch v. Ribar*, 156 F.3d 673, 677 (6th Cir. 1998), accept the complaint's factual allegations as true, *Broyde v. Gotham Tower, Inc.*, 13 F.3d 994, 996 (6th Cir. 1994), and determine whether plaintiff has pleaded "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007). In deciding a motion to dismiss, the question is not whether the plaintiff will ultimately prevail but whether the plaintiff is entitled to offer evidence to support his claims. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002). At the same time, bare assertions of legal conclusions are insufficient,

---

[2]Defendant's removal notice also bases jurisdiction on diversity of citizenship, but the facts pleaded in support are insufficient. The citizenship of the corporate parties is not established by stating that SK maintains operations in Tennessee and Defendant has its principal place of business in Pennsylvania. *See American Nat'l Fire Ins. Co. v. Chick*, 626 F. Supp. 459, 461 (M.D. Tenn. 1985).

3

and the "complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988). Unsupported allegations and legal conclusions "masquerading as factual conclusions" are not sufficient. *Mezibov v. Allen*, 411 F.3d 712, 716 (6th Cir. 2005).

### III. DISCUSSION

#### A. Breach of Contract

Plaintiffs allege Defendant breached both the contract for the existing facility and the contract for its new facility. Defendant contends neither contract is enforceable.

##### *1. Existing Facility*

Plaintiffs contend there was a new contract for 2008-09 which renewed the terms of the 2007-08 contract. Defendant argues the original contract could not be renewed without a written agreement or a waiver of the contract's prohibition on oral modification.

The parties agree this contract—either the 2007-08 one or the purported 2008-09 one which renews it—contains a choice of law provision under which Pennsylvania law governs. One of the essential elements of a breach of contract claim is "the existence of a contract, including its essential terms." *Corestates Bank, N.A. v. Cutillo*, 723 A.2d 1053, 1058 (Pa. Super. Ct. 1999).

In treating the purported 2008-09 contract as an unenforceable modification of the 2007-08 contract, Defendant relies exclusively on *C. I. T. Corp. v. Jonnet*, 214 A.2d 620, 622 (Pa. 1965), but just three years later, the Pennsylvania Supreme Court cast doubt on that case in *Universal Builders, Inc. v. Moon Motor Lodge, Inc.*, 244 A.2d 10, 16 (Pa. 1968). Indeed, at common law, even when a contract provides it can be modified only in writing, it can still be modified orally. *Id.* at 15 (citing

4

*Wagner v. Graziano Constr. Co.*, 390 Pa. 445, 448 (Pa. 1957). Given the sparse briefing on this point, the Court is not convinced that SK could not orally renew the contract, and therefore the Court will not dismiss this claim.

### 2. *New Facility*

Plaintiffs contends there was an agreement to contract for the new facility, specifically that SK was "promised the contract," or as stated in their brief, that Plaintiff "would have a meaningful opportunity to bid" on the new contract. In exchange, SK did not receive an upward adjustment in the rate on its contract for the existing facility. Defendant contends the purported contract for the new facility was an unenforceable agreement to agree.

Because there is no choice of law provision in this supposed contract, Tennessee law governs. *Mackey v. Judy's Foods, Inc.*, 867 F.2d 325, 328 (6th Cir. 1989); *Wear v. Transamerica Life Ins. Co.*, 2007 WL 3238867, 2007 U.S. Dist. LEXIS 81406 (E.D. Tenn. Nov. 1, 2007); *In re Estate of Davis*, 184 S.W.3d 231, 234 (Tenn. Ct. App. 2004); *Solomon v. FloWarr Management, Inc.*, 777 S.W.2d 701, 704-05 (Tenn. Ct. App. 1989). The existence of an enforceable contract is an essential element of a breach of contract claim. *C & W Asset Acquisition, LLC v. Oggs*, 230 S.W.3d 671, 676-77 (Tenn. Ct. App. 2007).

An "agreement to agree" is not an enforceable contract. *Four Eights, LLC v. Salem*, 194 S.W.3d 484, 486-87 (Tenn. Ct. App. 2005). "Contracts that leave material terms open for further negotiations are generally too vague to be enforceable." *Huber v. Calloway*, 2007 WL 2089753, *4, 2007 Tenn. App. LEXIS 435, *10-11 (Tenn. Ct. App. July 12, 2007). "In order for a contract to be binding it must spell out the obligation of the parties with sufficient definiteness that it can be performed." *Four Eights*, 194 S.W.3d at 487 (quoting *United American Bank of Memphis v. Walker*, 1986 Tenn. App. LEXIS 3368, 1986 WL 11250 (Tenn. Ct. App. 1986)). Plaintiffs' assertions that

5

SK was promised the contract or promised at least a meaningful opportunity to bid on the contract indicate that there was no contract, just an agreement to agree. There is no indication of an agreement as to any material terms.

Nevertheless, Plaintiffs claim the agreement to agree imposed on Defendant a duty of good faith and fair dealing in bidding on or negotiating the contract. But Defendant's duty to negotiate the contract in good faith would exist only if it had an "express contractual agreement to do so." *Barnes & Robinson Co. v. Onesource Facility Servs.*, 195 S.W.3d 637, 643 (Tenn. Ct. App. 2006) (citing *Kandel v. Center for Urological Treatment and Research, P.C.*, 2002 Tenn. App. LEXIS 260, 2002 WL 598567 (Tenn. Ct. App. April 17, 2002)). Such a duty may not be inferred absent an express contractual agreement. *Id.* at 644. There is no indication of an express contractual agreement here.

Relying on promissory estoppel, Plaintiffs also claim Defendant should be estopped from denying Plaintiffs the opportunity to negotiate the new facility contract because SK relied on that opportunity in not increasing Defendant's cost for the existing facility's 2007-08 contract. Defendant points out the complaint does not assert a promissory estoppel claim and promissory estoppel does not apply here.

"A promisor who induces substantial change of position by the promisee in reliance on the promise is estopped to deny its enforceability as lacking consideration." *Alden v. Presley*, 637 S.W.2d 862, 864 (Tenn. 1982) (quoting L. Simpson, *Law of Contracts* § 61 (2d ed. 1965)). Thus, promissory estoppel prevents a promisor from denying enforceability of a promise based on lack of consideration. But regardless of whether a promise is based on consideration or detrimental reliance, there must be a promise. As Defendant notes, one of the requirements of promissory estoppel is that a promise be "unambiguous and not unenforceably vague." *Chavez v. Broadway*

*Elec. Serv. Corp.*, 245 S.W.3d 398, 404 (Tenn. Ct. App. 2007). This is because promissory estoppel requires action or forbearance "of a definite and substantial character on the part of the promissee." *Id.* (quoting *Alden*, 637 S.W.2d at 864). As already discussed, the promise in this case is merely an agreement to agree, and there is no indication it was unambiguous. This conclusion is buttressed by Plaintiffs' various assertions about what was promised.

        **B.**        **Outrageous Conduct and Intentional Infliction of Emotional Distress**.

Defendant contends Plaintiffs' complaint does not sufficiently allege any outrageous conduct or serious mental injury by Hogue.[3] In response, Plaintiffs assert that under the liberal rules of notice pleading, they do not need to plead facts or legal theories to survive a motion to dismiss, as long as there is any set of facts, consistent with the allegations, under which relief could be granted.

The complaint in this case states:

> Following the Plaintiffs' complaints of racial discrimination, Defendant retaliated against Plaintiffs by refusing to honor its promise to award them the janitorial contract for its new facility. Defendant's senior manager Thomas Kramer then began to intentionally subject Plaintiff Hogue to hostile, harassing and intimating [sic] treatment in the workplace, causing Plaintiff Hogue to suffer emotional distress.

Plaintiffs argue the allegations of hostile, harassing, and intimidating action are sufficient to state outrageous conduct.

In 2007, the Supreme Court clarified federal pleading rules for motions to dismiss, which use the same standard of review as this motion for judgment on the pleadings. As described by the Sixth Circuit:

> [The Supreme] Court emphasized that even though a complaint need not contain "detailed" factual allegations, its "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Id.* (internal citation and quotation marks omitted). In so

---

[3]Defendant also contends that SK, as a corporation, is not capable of bringing an IIED claim. Plaintiffs concede this point (Court File No. 27 at 7 n.1).

7

holding, the Court disavowed the oft-quoted Rule 12(b)(6) standard of *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957) (recognizing "the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief"), characterizing that rule as one "best forgotten as an incomplete, negative gloss on an accepted pleading standard." *Twombly*, 127 S. Ct. at 1969.

*Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007).

Here, the allegations in the complaint do not show Hogue is entitled to recover for intentional infliction of emotional distress. "To state a claim for intentional infliction of emotional distress, a plaintiff must establish that: (1) the defendant's conduct was intentional or reckless; (2) the defendant's conduct was so outrageous that it cannot be tolerated by civilized society; and (3) the defendant's conduct resulted in serious mental injury to the plaintiff." *Lourcey v. Estate of Scarlett*, 146 S.W.3d 48, 51 (Tenn. 2004) (citing *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997)).

As Defendant notes in its reply brief, Plaintiffs' bald allegation of "emotional distress" is not a sufficient allegation of "serious mental injury." Furthermore, the outrageous conduct cannot be merely tortious or even criminal; it must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* (quoting *Miller v. Willbanks*, 8 S.W.3d 607, 614 (Tenn. 1999)). Workplace racial harassment is tortious but the complaint's conclusive statements do not give rise to an inference that the harassment was so outrageous and extreme as to go beyond all possible bounds of decency.

### IV.   CONCLUSION

For the foregoing reasons, the Court will **GRANT IN PART** and **DENY IN PART** Defendant's motion for partial judgment on the pleadings, and will **DISMISS** Plaintiffs' claims for

8

breach of contract relating to the new facility and outrageous conduct and intentional infliction of emotional distress.

An Order shall enter.

/s/
**CURTIS L. COLLIER**
**CHIEF UNITED STATES DISTRICT JUDGE**