UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| S.K. SERVICES and STEVE HOGUE, ) ) | |
| Plaintiffs ) ) | Case No. 1:08-CV-158 |
| v. ) ) | Chief Judge Curtis L. Collier |
| FEDEX GROUND PACKAGE ) SYSTEM, INC., ) ) | |
| Defendant. ) | |

## **MEMORANDUM OPINION**

This case's trial presented the Court with an unexplored issue of law: how Section 1 of the Civil Rights Act of 1866, *as amended*, 42 U.S.C. § 1981, extends to retaliation claims made not by an employee against his employer, but by an independent contractor on behalf of his employee, who, the contractor alleges, experienced race-based mistreatment by the defendant. For the following reasons, the Court holds the plaintiff in such a case must show the complaints that allegedly led to the retaliation were directed toward protecting the contractual rights between the plaintiff and the person on whose behalf the plaintiff complained.

**I.     FACTS**

Plaintiffs are S.K. Services, a janitorial services company, and Steve Hogue, the sole proprietor of that company. Beginning in 2002, Plaintiffs operated under a contract to provide cleaning services to Defendant FedEx Ground Package System, Inc. ("Defendant") at Defendant's facility in Chattanooga, Tennessee. The parties periodically made oral renewals of this contract, until reaching a new, written agreement in 2007. This agreement stated Plaintiffs would provide cleaning services at Defendant's facility from June 20, 2007, until June 20, 2008.

During 2007, Plaintiffs employed Tommy Blake, an African-American man, to work at Defendant's facility. Plaintiffs alleged that in December 2007, Blake was wrongfully accused of stealing payroll checks that had gone missing from the facility. Defendant conducted an investigation of the missing checks, concluded Blake was the person who had stolen them, and in January 2008, barred Blake from entering its premises. Plaintiffs alleged Defendant's investigation was improperly conducted and that Blake was barred from the facility not because he actually stole the checks, but because of his race. Plaintiffs also alleged that while he was working at Defendant's facility, Blake was subjected to race-based harassment by John Certo, one of Defendant's maintenance managers. The harassment allegedly included racial epithets made within earshot of Blake and Defendant's employees, spying on Blake in the workplace, calling Blake a "monkey," excluding him from restrooms, and commenting that the social security and welfare systems were "made for the black man."

Hogue complained about Blake's treatment and exclusion from the facility, first to Certo, then to Tom Kramer (the general manager at Defendant's Chattanooga facility), and then to a FedEx supervisor in Atlanta. Hogue alleged that as a result of these complaints, he became subject to harassment by Kramer. He also alleged Defendant broke an oral promise with him to extend the written contract they had reached in 2007 past its June 20, 2008, ending date, again because of his complaints. For its part, Defendant denied it retaliated against Plaintiffs, and also denied having made an oral agreement to extend the written contract past its June 20, 2008, expiration. Defendant maintained that it chose another janitorial services company, ServiceMax, instead of S.K. Services because ServiceMax provided a much lower bid for comparable services in 2008. Hogue, on the other hand, maintained he had to let go of Blake after Blake was barred from the facility because

Hogue had no contracts with other companies available, and thus could not employ Blake elsewhere.

Plaintiffs filed suit in the Chancery Court of Hamilton County, Tennessee; Defendants removed the case to this Court based on federal question jurisdiction, 28 U.S.C. § 1331 (Court File No. 1). Plaintiffs' Amended Complaint (Court File No. 32) contained claims against Defendant for breach of contract, unjust enrichment, outrageous conduct and intentional infliction of emotional distress, retaliation in violation of 42 U.S.C. § 1981, and violation of the Tennessee Human Rights Act, Tenn. Code Ann. § 4-21-301. The Court dismissed some of these claims through Defendant's motions for judgment on the pleadings and for summary judgment, preserving only the breach of contract and § 1981 retaliation claims for trial.[1]

Jury trial began on August 10, 2009. During the first day of trial, Defendant objected to Plaintiffs' attempt to introduce evidence of complaints he made to Defendant's personnel, arguing such evidence was irrelevant under Fed. R. Evid. 401 because it did not address the protected activity element Plaintiffs had to prove to succeed on their § 1981 claim. Specifically, Defendant argued the relevant contractual relationship that Hogue had to have protected was between Plaintiffs and Blake, and Hogue's evidence of complaints to Defendant was irrelevant to that relationship. The Court heard arguments from both sides during trial, recessed for the day, then heard further arguments at a hearing on the morning of the second trial day. When trial reconvened, the Court sustained Defendant's objection, as Plaintiffs had not demonstrated a connection between Hogue's

---

[1]For purposes of this opinion, the Court does not further address the breach of contract claim, focusing exclusively on Plaintiffs' § 1981 claim. However, it is important to make clear which entities had contracts with each other. S.K. Services had a contract with Defendant to provide cleaning services until June 20, 2008 (at the earliest). A contract also existed between Plaintiffs and Blake because Blake was Plaintiffs' employee. Importantly, though, no contract existed between Blake and Defendant; Blake merely worked at Defendant's facility under the auspices of his employment contract with Plaintiffs.

3

complaints and any racial animus that interfered with Blake's contractual rights vis-à-vis Hogue. This opinion elaborates on the legal reasoning behind the Court's decision to sustain the objection.[2]

## II. DISCUSSION

### A. The Civil Rights Act of 1866

Against the backdrop of Reconstruction and the millions of newly freed slaves following the Civil War, Congress passed the Civil Rights Act of 1866, intended to protect and enforce the rights newly granted to the freedmen and which belonged to every citizen. *See Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 717 (1989) (citing Representative Wilson's statement in Cong. Globe, 39th Cong., 1st Sess., at 1117 (1866)). In the form enacted in 1866, Section 1 of the Act provided all United States citizens the right "to make and enforce contracts" and "full and equal benefit of all laws and proceedings for the security of person and property, as is enjoyed by white citizens." Act of Apr. 9, 1866, ch. 31, 14 Stat. 27 (codified at 42 U.S.C. § 1981). While the statutory text referred explicitly to the making and enforcement of contracts, several courts held the Act also encompassed conduct that occurred after contract formation, such as employment discrimination and retaliation. *See, e.g.*, *Runyon v. McCrary*, 427 U.S. 160, 173 (1976) ("[A] consistent interpretation of the law necessarily requires the conclusion that § 1981, like § 1982, reaches private conduct" and private acts of discrimination); *Choudhury v. Polytechnic Inst. of N.Y.*, 735 F.2d 38, 42–43 (2d Cir. 1984) (applying § 1981 to retaliation claims).

However, in *Patterson v. McLean Credit Union*, 491 U.S. 164 (1989), the Supreme Court sharply curtailed § 1981's scope and eliminated its application to "conduct by the employer after

---

[2] Following the Court's oral ruling, the parties resolved this case by settlement.

4

the contract relation has been established, including breach of the terms of the contract or imposition of discriminatory working conditions." *Id.* at 177. The Court reasoned that even if a work environment discriminated in terms of how a contract was executed, such discrimination did not interfere with § 1981's plain language—the making or enforcement of contracts. *Id.* at 178.

Dissatisfied with the Supreme Court's decision in *Patterson*, Congress in 1991 amended § 1981's language to include post-formation conduct. A new subsection defined the phrase "make and enforce contracts" in § 1981(a) to include "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b); H.R. Rep. No. 102-40(I), at 141 (1991), *reprinted in* 1991 U.S.C.C.A.N. 549, 670. Congress intended to include both racial discrimination and retaliation during contract performance (not just formation), contrary to the Court's holding in *Patterson*:

> The Committee intends this provision to bar all race discrimination in contractual relations. The list set forth in subsection (b) is intended to be illustrative rather than exhaustive. In the context of employment discrimination, for example, this would include, but not be limited to, claims of harassment, discharge, demotion, promotion, transfer, *retaliation*, and hiring.

H.R. Rep. No. 102-40(I), at 92 (1991), *reprinted in* 1991 U.S.C.C.A.N. 549, 630 (emphasis added). As described below, subsequent Supreme Court cases would confirm that retaliation is a cognizable claim under § 1981, notwithstanding the absence of that word in the statute.

      **B.**    **Retaliation Claims under § 1981**

Section 1981 retaliation claims arise relatively frequently between employees and their employers. *See, e.g.*, *Stephens v. Erickson*, 569 F.3d 779 (7th Cir. 2009); *Hawkins v. 1115 Legal Serv. Care*, 163 F.3d 684 (2d Cir. 1998). But as one court has noted, such claims arise quite infrequently outside that relationship. *Benton v. Cousins Props., Inc.*, 230 F. Supp. 2d 1351, 1381

5

(N.D. Ga. 2002) ("If there are few Section 1981 cases claiming harassment in connection with an [sic] non-employment contractual relationship, there are even fewer cases dealing with the question of retaliation outside the employment context, under Section 1981."). Because of the paucity of authority dealing with cases of this type, no court has explicitly decided the elements a plaintiff must prove to make a prima facie case of retaliation under § 1981 in this context. However, the parties here both agreed on a Second Circuit case that used standard § 1981 retaliation elements in a case involving a non-employment contract. To establish retaliation, plaintiffs must show (1) they were "engaged in an activity protected under anti-discrimination statutes, (2) the defendants were aware of plaintiffs' participation in the protected activity, (3) the defendants took adverse action against plaintiffs based upon their activity, and (4) a causal connection existed between plaintiffs' protected activity and the adverse action taken by defendants." *Lizardo v. Denny's, Inc.*, 270 F.3d 94, 105 (2d Cir. 2001). Defendant contests the first element: whether Hogue's complaints on behalf of Blake constituted activity protected from retaliation under § 1981.

The Supreme Court has explicitly held retaliation claims are cognizable under § 1981. *CBOCS W., Inc. v. Humphries*, 128 S. Ct. 1951, 1954–55, 1961 (2008). However, the Court limited its holding to "retaliation against a person who has complained about a violation of another person's contract-related 'right.'" *Id.* at 1954. In other words, retaliation alone does not suffice absent a contractual relationship between the aggrieved party and another party. Indeed, it is precisely the contractual relationship between the complainant and the aggrieved party that must be adversely affected by the retaliation. For instance, in *CBOCS W.*, the complainant was an assistant manager who had complained about the firing of a black employee at his company. *Id.* The assistant manager was permitted to pursue a retaliation claim for complaining about the black employee's

6

firing, which constituted race-based contractual interference. In this case, however, the aggrieved party, Blake, had no contractual relationship with Defendant.

Supreme Court precedent makes clear the relevant contractual relationship, for purposes of the protected activity prong of the § 1981 retaliation claim, is that between the complainant and the party he seeks to protect or vindicate: "Section 1981 plaintiffs must identify injuries flowing from a racially motivated breach of their own contractual relationship, not of someone else's." *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 480 (2006); *see also id.* at 476 ("Any claim brought under § 1981, therefore, must initially identify an impaired 'contractual relationship,' § 1981(b), under which the plaintiff has rights.").

Lower courts applying *Domino's Pizza* and *CBOCS West* have also required a contractual relationship as a prerequisite for protected activity under § 1981. In fact, this Court has previously required a contractual relationship as a prerequisite to asserting a claim for § 1981 relief. *Reyes v. Seaton Enters., LLC*, No. 1:07-CV-196, 2008 WL 2066447, at *7 (E.D. Tenn. May 13, 2008) (citing *Domino's Pizza*, 546 U.S. at 480) (holding because there was "neither a contractual relationship alleged in the complaint, nor any indication plaintiff Sandra Reyes intended to form a contractual relationship with any of the Defendants . . . the complaint fails to state a claim for which relief may be granted" under § 1981). In another recent case, a court addressed school nurses who complained, under § 1981, that school administrators retaliated against them for bringing to the administrators' (and the media's) attention alleged discrimination by the school's principal against African-American students. The court held the plaintiffs' claim failed "because they have not presented any evidence to show that they engaged in protected activity—that is, that they complained about a violation of either their or others' contract-related rights on account of race." *Eugenio v. Walder*,

7

No. 06-CV-4928, 2009 WL 1904526, at *13 (S.D.N.Y. July 2, 2009) (citing *Domino's Pizza*, 546 U.S. at 479–80). The court further explained their complaints did not "constitute protected activity pursuant to Section 1981 because the alleged discrimination by Defendants against African-American students did not impair such student's rights to enter into contracts or rights under any existing contractual relationships." *Id.*

This, then, is the critical inquiry for the instant case: did Defendant's alleged retaliation against Hogue for complaining impair *Blake's* rights or ability to enter into contract, or impair his rights in any other way? Clearly, it could not have done so for the relationship between Defendant and Blake, because those two parties lacked any kind of contractual obligations to each other. Nor is the contract between Plaintiffs and Defendant the proper focus, because even assuming *arguendo* Defendant breached its contract with Plaintiffs, that breach was not done on account of race. Rather, Plaintiffs bring a quasi-derivative action in which they allege race played a factor in barring one of their employees from Defendant's premises, and complaining about that treatment subsequently impaired the contractual relationship between Plaintiffs and Defendant. This one-step-removed approach is too attenuated for § 1981 to reach the retaliation Plaintiffs allege. *See Domino's Pizza*, 546 U.S. at 475 n.2 ("An individual seeking to make *or* enforce a contract under which he has rights will have a claim under 42 U.S.C. § 1981, while one seeking to make *or* enforce a contract under which someone else has rights will not."); *id.* at 479 (injured parties "usually will be the best proponents of their own rights").

### C. Hostile Work Environment

In responding to Defendant's objection, Plaintiffs relied on *Danco, Inc. v. Wal-Mart Stores, Inc.*, 178 F.3d 8 (1st Cir. 1999), to argue the alleged treatment to which Defendant subjected Blake

8

constituted a hostile work environment, implicating an analysis under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2. *Danco* suggests a plaintiff company, which serves as an independent contractor for a defendant company, can pursue a § 1981 claim for a hostile work environment if the plaintiff company's employee is discriminated against while working at the defendant company. 178 F.3d at 13-14.

Neither the Sixth Circuit nor any other court appear to have adopted *Danco*'s position that an independent contractor can bring a § 1981 hostile work environment claim for discrimination against its employee by another entity. Sixth Circuit caselaw typically uses the same analysis for § 1981 claims as for Title VII claims. *Noble v. Brinker Int'l, Inc.*, 391 F.3d 715, 720 (6th Cir. 2004). Since a plaintiff bringing a hostile work environment claim must show he is a member of a protected class and was subjected to unwelcome racial harassment, *Lovelace v. BP Prods. N. Am., Inc.*, 252 F. App'x 33, 39 (6th Cir. 2007), it is hard to fathom a company succeeding on a hostile work environment claim. Blake may have suffered a hostile work environment, but SK Services did not. Moreover, the issue here is whether Plaintiffs' complaints about a hostile work environment are admissible. As the Supreme Court precedent suggests, the lack of a contractual relationship between Blake and Defendant prevents Plaintiffs from bringing a § 1981 retaliation claim.

### D.     Evidentiary Framework

The Court, then, is left with Defendant's initial objection: evidence of Hogue's complaints is not relevant to the question of whether Hogue experienced retaliation for trying to protect the contractual relationship between himself and Blake. Because this is a novel issue, no other court has adopted a standard to evaluate the relevance of such complaints in this context. It is therefore appropriate to do so here.

The Court holds that for the issue of § 1981 retaliation to be submitted to a jury, an independent contractor claiming he suffered retaliation for complaining on behalf of his employee must make two showings. First, the plaintiff must introduce evidence providing the Court with sufficient information to determine the substance of the complaints. Vague allegations, or mere assertions that the plaintiff did in fact complain, are insufficient for this purpose. Rather, the evidence of the complaints must contain enough detail that the Court can make a determination regarding their contents. This is important because the contents of the complaint determine whether the complaints concern a protected activity under § 1981. Once the Court determines the contents of the complaints, the plaintiff must, secondly, show the race-based animus that was the subject of the complaints interfered, or was capable of interfering, with the contract rights between the complainant and the party he sought to protect. In this part of the analysis, the effects of the complaint on the contractual relationship between the complainant and the party to whom he complained are irrelevant, even if the complainant contends that relationship was adversely affected by his complaints (for example, as the instant case illustrates, by resulting in the alleged refusal to extend an existing contract).

In this case, Plaintiffs responded to the Court's directive to provide the substance of Hogue's complaints by offering evidence that Hogue told Kramer "you have a man with a problem. He's a bigot," apparently referring to Certo. Hogue, apparently, then made a substantially similar complaint to Defendant's supervisor in Atlanta. Plaintiffs have satisfied the first part of their evidentiary burden, as Hogue may testify to the substance of his complaints based on his personal knowledge. Fed. R. Evid. 602. Beyond that, however, the Court does not see a connection between the statements and racist conduct Certo is alleged to have initiated, and interference with Blake's

10

contractual rights with S.K. Services. Nor is there a connection between the allegedly unfair, race-tinged investigation into the missing payroll checks and those contractual rights. The contract between Plaintiffs and Blake ended when Hogue said he had no other work for Blake to perform, but any impairment of contractual rights in that relationship arose from Hogue's lack of other business opportunities, not directly from Defendant's treatment of Blake. While Hogue's lack of other opportunities for Blake is unfortunate, the preceding law makes clear that Hogue cannot rely on § 1981 to assert the contractual rights held between himself, his company, and Blake.

### III. CONCLUSION

For the foregoing reasons, the Court has **SUSTAINED** the objection Defendant raised to Plaintiffs' introduction of evidence of complaints made by Hogue.

/s/
**CURTIS L. COLLIER**
**CHIEF UNITED STATES DISTRICT JUDGE**

11